UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Donald Cosby,

        Petitioner,

vs.                              Case No.  5:10-cv-485-Oc-29SPC

Warden, FCC Coleman-USP II,

        Respondent.
_____

**OPINION AND ORDER**

**I.**

This matter comes before the Court upon review of Petitioner Donald Cosby's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. #1, Petition).  Petitioner challenges a prison disciplinary action stemming from an incident that took place on August 6, 2009, while Petitioner was incarcerated within the Federal Bureau of Prisons ("BOP") located at Coleman, Florida.[1]  See generally Petition.  The Petition sets forth two grounds for relief: (1) violation of Petitioner's due process rights due to the BOP failure to provide Petitioner with an impartial fact finder during the disciplinary process; and (2) violation of Petitioner's

---

[1] Cosby filed the Petition while incarcerated at the Federal Correctional Institution in Coleman, Florida.  Since the date of the filing of the Petition, Cosby has been released from BOP custody, and commenced a five-year term of supervised release.  See Respondent's Response to Court's November 2, 2012 Order (Doc. #20). Nonetheless, Petitioner's release does not moot his Petition as his supervised release is a form of custody that involves restriction on Petitioner's liberty.  Dawson v. Scott, 50 F.3d 884, 886 n.2 (11th Cir. 1995).

due process rights due to the BOP failing to adhere to the BOP's rules and regulations during the disciplinary process because the incident report and disciplinary hearing officer's report were not timely delivered to him. Id. at 3-4.² As relief, Petitioner seeks expungement of the report and restoration of the 21 days of loss of good time credit. Id. at 6. Petitioner files a Memorandum of Law in Support of his Petition (Doc. #2). Respondent filed a Response to the Petition (Doc. #11) and attached exhibits in support (Doc. #11-1, Exhs. 1-6).³ Petitioner filed a Reply (Doc. #13). This matter is ripe for review.

**II.**

The Supreme Court held that although "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," a prisoner had a protected liberty interest in statutory good time credits, and thus had a constitutional right to procedural due process in a disciplinary hearing. Wolff v.

---

²Petitioner contends that the incident report was delivered 31 hours after the incident, instead of 24 hours after the incident; and, the hearing officer report was delivered to him 60 days after the hearing. Petition at 3-4.

³Respondent initially filed a motion to dismiss the Petition (Doc. #8) based upon Petitioner's failure to exhaust his administrative remedies. Petitioner filed a response to the motion arguing that he attempted to exhaust his remedies but his actions were thwarted (Doc. #9). After being directed to file a reply to Petitioner's response, Respondent filed the instant Response, waiving the exhaustion argument. Response at 2.

McDonnell, 418 U.S. 539, 555-57 (1974). The Supreme Court outlined the specific procedures that prison disciplinary panels must comply with to satisfy procedural due process in a prison setting. Id. at 556. In particular, Wolff instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the prisoner to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and, (3) a written statement by the fact finder outlining the evidence relied on and the reasons for the disciplinary action. Id. at 563–67. Inmates do not "have a right to either retained or appointed counsel in disciplinary hearings." Id. at 570. As a caveat, where a disciplinary action involves an illiterate inmate, or when the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, the inmate should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. Id.

In Superintendent v. Hill, 472 U.S. 445 (1985), the Supreme Court again addressed the requirements of procedural due process in the prison setting involving disciplinary actions. In Hill, the Supreme Court held that the revocation of good time credits only satisfies minimal standards of procedural due process if "the

findings of the prison disciplinary board are supported by <u>some</u> evidence in the record." <u>Id.</u> at 454 (emphasis added).  The Court further explained that "[a]scertaining whether this [due process] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." <u>Id.</u> at 455.  Rather, the Supreme Court held that "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Id.</u> at 455-56.

### III.

According to the record, on July 31, 2009, BOP staff member Johnson observed Cosby and another inmate "pass an unknown item to one another" and then saw Cosby "place something in his pocket." Exh. 2, Incident Report No. 1899936, at ¶11.  Cosby was "given a direct order" by Johnson "to turn around and come back to the front of [the] housing unit." <u>Id.</u>  Cosby "complied but discarded what he had in his pocket onto the sidewalk." <u>Id.</u>  Johnson ordered Cosby to pick the object up, and Cosby did so. <u>Id.</u>  Cosby was then ordered to turn the item over to Johnson "several times," but he refused to comply. <u>Id.</u>  Cosby was ordered "to place his hands on the wall," but on his way to the wall Cosby "pulled away" from Johnson "throwing the item he possessed in the air towards the roof" of the housing unit. <u>Id.</u>  As Cosby "resisted and pulled away" from Johnson, Cosby's "hand came back towards [Johnson's]

face," and Johnson placed Cosby on the ground. Id. Cosby then "submitted to hand restraints," and "was escorted to the Lieutenant's office." Id.

On July 31, 2009, Johnson wrote Cosby an incident report for violation of Disciplinary Code 305, Possession of Anything Unauthorized, and Code 307, Refusing the Order of a Staff Member. Id. at ¶¶ 9, 11. On August 1, 2009, BOP Lieutenant Brown was assigned to investigate the charges, and interviewed Cosby during the course of the investigation. Exh. 2 at ¶¶ 24-27. Lieutenant Brown advised Cosby of his rights and asked him if he wanted to make a statement regarding the incident report filed against him. Id., at ¶¶ 23, 24. Cosby stated only that the other inmate "had nothing to do" with the incident. Id. at ¶24. After investigation, Lieutenant Brown determined that the charges against Petitioner should include a violation of Disciplinary Code 224A, Attempted Assault (minor), and added it to the disciplinary report. Id. at ¶9. Lieutenant Brown provided Cosby with a copy of the incident report on August 1, 2009, and referred the matter to the Unit Discipline Committee ("UDC") for further action. Id. at ¶¶ 14-16, 26-27. On August 6, 2009, the UDC reviewed the matter and determined that it should be referred to the Discipline Hearings Officer ("DHO") for a formal hearing. Id. at ¶¶ 18-20.

On August 6, 2009, BOP Staff member Chavis notified Cosby that there would be a disciplinary hearing, and advised Cosby of his

rights during the disciplinary process, which Cosby acknowledged. Exh. 3, Notice of Discipline Hearing Before the DHO; Exh. 4, Inmate Rights at Discipline Hearing. Cosby did not request to have any witnesses brought to the hearing to testify on his behalf, but he did request to have a staff representative assigned to assist him. Exh. 3; Exh. 5, Discipline Hearing Officer Report No. 1899936, at ¶¶II, III(C)(1). Staff representative Boubos was assigned, and assisted Petitioner during the proceedings. Exh. 5, at ¶¶II(B); III(C).

On August 26, 2009, the DHO commenced the hearing. Exh. 5 at ¶ I(B). Cosby denied the charges against him, stating that he neither assaulted nor attempted to assault anyone. Id. at ¶III(B). Staff representative Boubos noted that the assault charge was not in the original incident report, but was added later following the Lieutenant's investigation. Exh. 5 at ¶III(C). Following a review of the evidence, including Petitioner's statements and the statement of the reporting BOP staff member, the DHO found that Petitioner had committed the prohibited act of attempted assault without serious injury. Id. at § V. The DHO sanctioned Petitioner with, *inter* alia, a disallowance of 21 days of good conduct time. Id. at ¶VI. The DHO noted that the sanctions were appropriate because "[a]ssaulting another person (staff) seriously jeopardizes the safety of that peson and disrupts the orderly running of the institution." Id. at § VII. The DHO report is dated November 2,

2009, but a copy of the DHO Report was not delivered to Petitioner until November 12, 2009. Id. at § IX. The DHO report notes that "the distribution of this DHO packet to [Cosby] was delayed past the ten working days due to unforeseen circumstances," but noted that the delay "did not hinder" Cosby's appeal rights. Id. at §VIII.

Here, Petitioner challenges only his due process rights, not the findings by the DHO. Response (Doc. #13) at 1 (stating "Petitioner has not, or is not, raised [sic] the issues about how much evidence is or was required by the disciplinary board to find Petitioner guilty."). Based upon the record, the Court finds that Petitioner was afforded procedural due process consistent with the safeguards set forth in Wolff. Petitioner received written notice of all the charges against him on August 1, 2009, Exh. 2 at ¶¶14-16. Indeed, Petitioner points out that, when he received a copy of the disciplinary report on August 1, 2009, the "added charge" i.e. violation of Disciplinary Code 224A, Attempted Assault (minor), was included in the copy provided to Petitioner. Response (Doc. #13) at 2. Petitioner also received notice of the DHO hearing on August 6, 2009 and advised of his rights in connection with the same. Exh. 2 at ¶¶23-23; Exh 3; Exh. 4. The DHO's disciplinary hearing did not occur until August 26, 2009, providing Petitioner with adequate time to prepare a defense. Exh. 5 at I(A). Petitioner was provided the opportunity to call witnesses but chose not to call

any witnesses. Exh. 3; Exh. 5 at ¶III(C)(1). Petitioner was afforded the opportunity to request the assistance of a staff representative during the disciplinary process, and a representative was appointed to assist him. Exh. 3; Exh. 5 at ¶II. Finally, Petitioner was provided with written findings of fact explaining the basis for the DHO's determination. Exh. 5 at ¶IX.3.

Petitioner has not demonstrated how the DHC was impartial. The allegations against Petitioner were lodged by BOP staff member Johnson. According to Petitioner's own representative, staff member Johnson admitted to rewriting the incident report to add the assault charge. Exh. 5 at ¶V. Further, the facts giving rise to the new charge were not altered or changed in any way. The addition of the assault charge arose out of the exact same facts and the additional charge was made known to Petitioner prior to his hearing. Further, Petitioner cannot demonstrate that he was deprived of an impartial fact finding or hearing. Officer Johnson did not investigate the charges. The incident was investigated by Lieutenant Brown. Officer Johnson did not preside over the disciplinary hearing. The disciplinary hearing officer was T. Lane. Id. at ¶IX.

Similarly, Petitioner has not shown how he was prejudiced by the BOP's failure to provide him with a copy of the disciplinary hearing findings within the ten-day time frame. As noted, Petitioner's right to appeal was not affected by the alleged delay.

Further, Petitioner cannot show how his inability to locate a witness after his disciplinary hearing prejudiced him in his hearing when the witness did not testify in the hearing. Moreover, the failure of the BOP to adhere to its own internal recommended time frames does not give rise to a due process violation. Macia v. Williamson, 219 F. App'x 229, 233 (3d Cir. 2007)(stating a "prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under Wolff v. McDonnell."); see also Garcon v. Owen, Civil Action No. 6:11-cv-1411-MBS-KFM, 2012 WL 2458130, *4 (D.S.C. May 31, 2012)(rejecting petitioner's allegation that failure to provide him copy of incident report within 24 hours as required by BOP policy violates due process).

ACCORDINGLY, it is hereby

**ORDERED and ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED.**

2.   The **Clerk** is directed to enter judgment, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __20th__ day of March, 2013.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record